UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SKIDMORE, OWINGS & MERRILL LLP,

    Plaintiff

        v.

JAY MARSHALL STRABALA,
individually and d/b/a 2DEFINE
ARCHITECTURE,

    Defendant.

------------------------------------------------------------------x

No. 11-cv-3906 (MGC) (ECF)

(By Special Appearance)

## **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

William W. Chuang (WC3050)
Jakubowitz & Chuang LLP
325 Broadway, Suite 301
New York, NY 10007

*Attorneys For Defendant*

## TABLE OF CONTENTS

I. Statement of Facts ........................................................................................................... 1

II. Argument ........................................................................................................................ 2

    a. CPLR 302(a)(3)(ii) Does Not Grant Personal Jurisdiction Over Strabala ............. 2

        i. Standard of Review. ........................................................................................ 2

        ii. The Relevant Law. .......................................................................................... 2

        iii. Strabala's Acts Did Not Cause An Injury To SOM In New York. ................. 3

        iv. Penguin Group Should Not Be Extended To The Facts Of This Case ......... 6

        v. Strabala Did Not Expect, Nor Should He Reasonably Have Expected, His Acts To Have Consequences In New York. ................................................... 8

        vi. It Would Violate Due Process to Exercise Jurisdiction Over Strabala In New York ...................................................................................................... 11

    b. SOM Does Not State a Claim For Relief Under The Lanham Act And The Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6). ............................. 12

        i. Standard of Review. ...................................................................................... 12

        ii. SOM Has To Rely on Copyright Law And Not the Lanham Act To Defend Against Claims of Authorship ...................................................................... 13

III. Conclusion .................................................................................................................... 15

i

# TABLE OF AUTHORITIES

Agence France Presse v. Morel, 769 F.Supp.2d 295 (S.D.N.Y. 2011)

American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971).

Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999).

Bensusan Rest. Corp. v. King, 126 F.3d 25 (2d Cir. 1997

Broughel v. Battery Conservancy, 2010 WL 1028171 (S.D.N.Y. 2010).

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1972)

Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23 (2003)

Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317 (N.Y. 1980).

King County, Wash. v. IKB Deutsche Industriebank, AG, 769 F.Supp.2d 309 (S.D.N.Y. 2011)

LaChapelle v. Fenty, 812 F.Supp.2d 434 (S.D.N.Y. 2011)

LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210 (N.Y. 2000)

Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d 295 (N.Y. 2011)

Sybron Corp. v. Wetzel, 46 N.Y.2d 197 (N.Y. 1978)

## I. STATEMENT OF FACTS

Defendant Jay Marshall Strabala ("Strabala") was an architect at the Chicago offices of Skidmore, Owings & Merrill, LLP ("SOM") for seventeen years, ascending to the position of Associate Partner and Studio Head. (First Amended Complaint ¶ 22.)[1] While at SOM, he worked on the design of the Burj Khalifa and the Nanjing Greenland buildings, amongst others. (F.A.C. ¶ 23.) In 2006, Strabala left to work for SOM's competitor, M. Arthur Gensler, Jr & Associates, Inc. ("Gensler"), where he stayed until February 2010. At Gensler, Strabala was the Director of Design, and was the Chief Architect on the design of the Shanghai Tower. (Strabala Decl. ¶ 3.)

Since about June 2010, Strabala has been a principal at 2Define Architecture. (Strabala Decl. ¶ 3)[2] He is still involved in the design of the Shanghai Tower at 2Define. (Id.) SOM and Gensler were evidently not pleased with his success, as they filed similar lawsuits a day apart, with Gensler filing in Chicago and SOM filing in New York. (Id. at ¶ 6) The Chicago action has been terminated after the Court dismissed Gensler's complaint for failure to state a claim. (Id.)

SOM alleges that Strabala took sole credit for designing the Burj Khalifa and Nanjing Greenland buildings. In support, SOM cites a Flickr page, 2Define's website at www.define-arch.com, and a presentation Strabala made at a Summit held in Shanghai. These documents all show that Strabala gave due credit to SOM. SOM admits that it was credited on the Flickr page and that the 2Define website acknowledged SOM. (F.A.C. ¶¶ 32-38.) The

---

[1] Hereinafter, "F.A.C." will refer to the First Amended Complaint.
[2] Hereinafter, "Strabala Decl." will refer to the Declaration Of Jay Marshall Strabala In Support Of The Motion To Dismiss The First Amended Complaint.

draft PowerPoint presentation in the F.A.C. contains references to SOM as well as the large team size on these types of projects. (F.A.C. Ex. B, Strabala Decl. ¶ 20.)

Now Strabala, by special appearance, moves pursuant to Fed. R. Civ. P. 12(b)(2) to dismiss the action for lack of personal jurisdiction. Strabala also moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss SOM's Lanham Act claims for failure to state a claim for relief.

## II.   ARGUMENT

### a.   CPLR 302(a)(3)(ii) Does Not Grant Personal Jurisdiction Over Strabala

#### i.   Standard of Review.

In order to survive this motion to dismiss, SOM must make a prima facie showing of personal jurisdiction over Strabala. King County, Wash. v. IKB Deutsche Industriebank, AG, 769 F.Supp.2d 309, 313 (S.D.N.Y. 2011). After jurisdictional discovery has been taken, as in this case, SOM's prima facie showing must include an averment of facts that, if credited by the Court, would suffice to establish jurisdiction over Strabala. Id., citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999). Conclusory allegations are insufficient; at this point, the prima facie showing must be factually supported. Id.

#### ii.   The Relevant Law

In assessing whether or not personal jurisdiction is authorized, the Court must first look to the New York long-arm statute. Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). If it determines that the exercise of jurisdiction is appropriate under the statute, the Court must then decide if such an exercise comports with due process. Id.

SOM relies on CPLR § 302(a)(3)(ii) to assert personal jurisdiction over Strabala.[3]

---

[3] CPLR § 302 reads, in relevant part, "(a) As to a cause of action arising from any of the acts

2

(F.A.C. ¶ 14.) This provision of the CPLR requires SOM to show that:

(1) Strabala committed a tortious act outside New York;

(2) the cause of action arises from that act;

(3) the act caused injury to SOM within the state;

(4) Strabala expected or should reasonably have expected the act to have consequences in the state; and

(5) Strabala derived substantial revenue from interstate or international commerce. LaMarca v. Pak-Mor Mfg. Co., 95 N.Y.2d 210, 214 (N.Y. 2000). This motion focuses on the third and fourth elements of the test. SOM has not alleged an injury in New York, and Strabala did not expect his actions to have consequences in New York.

### iii. Strabala's Acts Did Not Cause An Injury To SOM In New York

It is well-settled that an injured party's domiciliary in New York is an insufficient predicate for jurisdiction, which must be based upon a more direct injury within the state. Fantis Foods, Inc. v. Standard Importing Co., Inc., 49 N.Y.2d 317, 326 (N.Y. 1980). Jurisdiction under CPLR 302(a)(3) requires the imparting of the original injury within the State of New York, and not just the resultant damage. American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 434 (2d Cir. 1971). Economic harm that occurs in New York due to domicile there has to be coupled with a direct injury such as the threatened loss of important New York customers in order for jurisdiction to lie. Sybron Corp. v. Wetzel, 46 NY 2d 197, 205 (N.Y. 1978).

---

enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: *** (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he *** (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce..."

3

The gravamen of SOM's complaint is that Strabala's actions have allegedly confused the public as to whether SOM or Strabala designed certain buildings. (F.A.C. ¶¶ 4, 47, 62, 70, 71, 72.) SOM does not allege that it has lost any business anywhere as a result of Strabala's actions, and has not alleged any confusion—the original injury— within New York.

Even with the benefit of discovery, SOM is unable to show that any of its current or potential clients, based in New York or elsewhere, actually attended Strabala's presentation at the Fourth Annual Ultra-High-Rise Summit (the "Summit") held in Shanghai on March 22-23, 2011. Rather, SOM only alleges that various parties were listed on the attendee list. (F.A.C. 45-47.) The attendee list contains the companies that paid for attendance. (Strabala Decl. ¶ 7.) However, some companies pay to have their names in the brochure but do not attend. (Id.)

Even if one were to assume that everyone on the attendee list actually attended, which SOM apparently does, the Summit scheduled concurrent presentations so that not all attendees could have seen Strabala's presentation. (Strabala Decl. ¶ 7.) Similarly, SOM has not alleged that any of its current or potential clients, based in New York or elsewhere, visited 2Define's website or Flickr page.

Moreover, SOM does not allege that Strabala's actions caused any confusion in New York. SOM alleges that some of the attendees were confused as a result of the attendees, but fails to identify them or state if they had any connection to New York. (F.A.C. ¶ 46, 47.) SOM further alleges that a few of the current and potential clients of its New York office attended the Summit, but does not identify them, or allege that they witnessed Strabala's presentation, or that they were confused by the presentation, or that they were based in New York, or that they took their business to Strabala as a result of the presentation. (F.A.C.

4

¶¶ 46, 47.) Even if it were assumed for the sake of argument that clients of SOM's New York office saw Strabala's presentation and were confused as a result, jurisdiction would still be improper because the original injury of confusion would not have occurred in New York. In this hypothetical case, only the consequential pecuniary injury would occur in New York, which is insufficient under American Eutectic and Fantis Foods.

The Court should disregard SOM's allegations that Strabala invited representatives of New York-based media entities to the Summit. (F.A.C. 44.) There is no allegation that any of these media representatives attended Strabala's presentation, or that they published any articles or interviews concerning Strabala's presentation. In particular, SOM does not allege that any interview or article regarding the Summit discussed whether Strabala or SOM designed the buildings in question, which is the statement that gives rise to the claims against Strabala. (F.A.C. 44.) Thus, the statements could not have tortuously harmed SOM.

SOM also alleges that potential clients or sources for referrals for Strabala were listed as attendees of the Summit. (F.A.C. ¶ 45.) Strabala does not see any of the companies as potential clients or sources for referral, and in fact, many of them are direct competitors of 2Define or are vendors who want to be hired by 2Define. (Strabala Decl. ¶ 8.) More to the point, however, SOM does not allege that these companies are *their* potential clients or sources for referral who were allegedly misled by Strabala's presentation, so their attendance at the Summit is irrelevant.

After having a chance to take jurisdictional discovery, SOM should not be permitted to make such token, conclusory allegations to exert jurisdiction over Strabala in New York. King Country, 769 F. Supp.2d at 313. SOM has failed to allege with any specificity that it has suffered any harm in New York—it has not even alleged that any actual or potential

customer had attended Strabala's presentation, or visited his Flickr page or company website. The failure to allege the imparting of an original injury in New York bars SOM's claim of personal jurisdiction.

    iv.    *Penguin Group* Should Not Be Extended To The Facts Of This Case.

SOM can only try to allege an injury in New York based on its domicile there, inviting the Court to extend the holding in Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d 295 (N.Y. 2011). The defendant in Penguin allegedly uploaded four copyrighted literary works in their entirety, making them available for not only the Internet-browsing public at large but also its 50,000 members. Id. at 299. The Second Circuit certified the question of whether the situs of injury for copyright infringement cases would be the location of the infringing action or the location of the copyright holder. Id. at 301. However, the New York Court of Appeals declined to address that broad question and expressly limited its holding to the "uploading of a copyrighted printed literary work onto the Internet..." Id. at 301-302. On that narrow issue, the Court of Appeals then held that the situs of injury would be New York. Id. at 306-307. As seen below, the Penguin Court was concerned that in a digital copyright infringement case, it would be hard to prove loss of sales and to correlate lost sales to any particular geographic area. However, SOM does not sell its copyrighted works and the considerations that motivated the Penguin court to create a special digital copyright infringement rule do not apply here. Therefore, the Court should decline to extend Penguin on these facts.

As an initial matter, the only copyrighted image that SOM claims was uploaded is a closely-cropped version of one image contained on one page of a copyrighted five-page work. (F.A.C. ¶ 57.) Even then, SOM admits that Strabala had properly credited the image to

6

SOM. (F.A.C. ¶ 57.) To be clear, SOM does not allege that Strabala had uploaded any part of the Presentation contained in Exhibit B to the First Amended Complaint to the Internet.

There is no cause to extend Penguin to the facts of this case. The Penguin Court was motivated by the threat posed by the digital piracy of e-books to copyright owners. Penguin, 16 N.Y.3d at 304. It was concerned that the traditional analysis in American Eutectic could not be applied in digital piracy cases given the lack of a singular location where the plaintiff lost business, and that it would be difficult to correlate lost sales to a particular geographic area. Penguin at 305, citing American Eutectic, 439 F.2d at 433. Thus, the Penguin Court, by analogy to Sybron, concluded that copyright infringement outside New York that was likely to cause harm through loss of business inside New York was sufficient to establish personal jurisdiction. Penguin, 16 N.Y.3d at 306, citing Sybron Corp., 46 N.Y.2d at 204.

These concerns do not apply here. SOM is an architecture firm. (F.A.C. ¶ 2.) Its business is architecture, planning, engineering, and interior design, (F.A.C. ¶ 2.), not to sell copies of its copyrighted works to the public. There is no doubt that if SOM has lost business as a result of the upload to the Internet of a properly-attributed, heavily-cropped partial version of a single image that appears in a five-page copyrighted work, then such losses would have a single location, and it would be easy to correlate the lost sales to a particular geographic area.

Moreover, SOM does not allege that the uploading of the one image would cause harm through loss of business inside New York. In fact, the uploaded image was properly attributed to SOM and could not have caused confusion. SOM alleges that it could lose business as a result of Strabala's allegedly-false claims that he and not SOM had designed

various buildings, (F.A.C. ¶¶ 36, 37) but the only copyrighted image uploaded to the Internet properly credited SOM. (F.A.C. ¶ 57.)

In short, Penguin should not be extended because SOM does not allege that it risks lost sales in New York due to the claimed copyright infringement. Also, any lost sales would be easy to locate geographically.

### v. Strabala Did Not Expect, Nor Should He Reasonably Have Expected, His Acts To Have Consequences In New York.

SOM also has the burden of demonstrating that Strabala expected or had reason to expect that his out-of-state actions would have had *direct* consequences in New York. LaMarca, 95 N.Y.2d at 214. Strabala did not expect any consequences in New York, and certainly had no reason to do so. (Strabala Decl. ¶ 13.) He did not interject or target New York with his actions. In fact, he was unaware that the Summit was going to distribute the draft PowerPoint presentation and learned that it had done so only after this lawsuit had been filed. (Strabala Decl. ¶ 12.) SOM does not allege that the PowerPoint presentation was distributed online.

Every action that gives rise to the Complaint occurred outside of New York. The Summit was held in Shanghai, China (F.A.C. ¶ 41). The allegedly-infringing images and statements were posted on a Flickr page maintained in Chicago, Illinois and a website maintained in China (Strabala Decl. ¶ 15). 2Define's website is non-interactive, and directs viewers to contact its offices in Illinois, Shanghai, and South Korea. (Id.) SOM complains that the presentation and the websites made certain allegedly tortious statements about projects in China, Hong Kong, and Dubai. (F.A.C. ¶¶ 36, 37, 38). None of these projects were owned or built by entities based in New York. (Strabala Decl. ¶ 16.)

Even the location of SOM's domicile was not clear to Strabala. SOM was formed in

8

Chicago and took New York as its domicile during Strabala's period of employment with them. (Strabala Decl. ¶ 14.) For the entire time he was employed by SOM, he worked in their Chicago office. (F.A.C. ¶ 22.) Even the Court and the parties were unclear on SOM's domicile and how it would be affected by SOM's formation as a limited liability company or limited liability partnership. Strabala had no reason to expect that any consequence would result in New York due to his actions.

SOM alleges that the copyrighted images were misappropriated by Strabala in Chicago and in violation of an employment contract allegedly signed in Chicago. (F.A.C. ¶ 59.)

Strabala and 2Define have made no effort to engage the New York market, either directly or indirectly. 2Define and Strabala obtain most, if not all, of their business as referrals from existing Chinese customers in China. (Strabala Decl. ¶ 9.) 2Define and Strabala have not pitched any services to anyone in New York, and in fact, *all* of their clients are located outside the United States. (Id. at ¶ 13.) 2Define generates 91% of its revenues from China, 8% from Korea, and 1% from Malaysia. (Id.) Strabala gives presentations at various summits for the continuing professional education credits he needs to maintain accreditation, which is hard to obtain otherwise because the requirements for CEUs are set by the American Institute of Architects. (Id. at ¶ 10.) Strabala does not attend these summits to pitch his services, and he has never received any business as a result of any presentation. (Id.) SOM's allegations to the contrary, 2Define and Strabala do not consider Tishman Speyer, KPF, the Syska Hennessey Group, Thornton Tomasetti, or Arup as potential clients and/or sources of referral for employment. (Strabala Decl. ¶ 8.) KPF, Arup, and Syska Hennessey Group are either engineers or architectural firms that compete with

9

2Define. (Id.) Syska Hennessey Group & Thornton Tomasetti are vendor that wants 2Define to retain their services. (Id.) Tishman Speyer is trying to move to China, but they are direct competitors of 2Define's current clients. (Id.) Furthermore, 2Define lacks the expertise to guide them through the planning processes and approvals necessary needed to move in China. (Id.)

Neither Strabala nor 2Define have any ties to New York. Strabala and 2Define do not operate any offices in New York, nor do they own or lease any real estate there. (Strabala Decl. ¶ 4.) Strabala and 2Define do not have any bank accounts in New York, and they do not do any business in the State of New York. (Id.) Strabala last visited New York in 2007, when he went to see Thornton Tomesetti on behalf of his then-employer Gensler. (Strabala Decl. ¶ 5.) 2Define and Strabala had conducted business with Thornton Tomesetti but only with the firm's Shanghai office, and currently has no dealings with the company. (Id.)

At SOM's request, Strabala obtained a New York architectural license, which he renewed at the request of Gensler, his employer after SOM. (Strabala Decl. ¶ 18.) Strabala made his New York license inactive as of March 31, 2012. (Strabala Decl. ¶ 18.) Strabala and 2Define has never conducted any business using his New York architectural license. (Strabala Decl. ¶ 18.) He is currently a licensed architect only in the States of California, Illinois, and Texas. (Strabala Decl. ¶ 18.)

SOM suggests that seeking media coverage from the many media entities in New York can give rise to personal jurisdiction in New York. (F.A.C. 44.) As previously discussed, SOM has not alleged that any media entity published an interview or article about Strabala's presentation at the Summit, or published any statements by Strabala regarding the source of architectural services for the design of the buildings in question. Moreover,

10

media entities in New York—such as the New York Times, Reuters, the Architectural Record, and the Associated Press—have an international reach. Seeking publicity from these organizations is not an effort to engage the New York market, but rather an attempt to get international press. (Strabala Decl. ¶ 19.)

On the facts here, where all the actions took place outside of New York and where Strabala and 2Define did not attempt to serve the New York market, it is unreasonable to expect Strabala to know that his actions would have consequences in New York.

vi. <u>It Would Violate Due Process to Exercise Jurisdiction Over Strabala In New York</u>

An assertion of specific jurisdiction over Strabala comports with Constitutional Due Process only "if the defendant had purposefully directed his activities at residents of the forum and the litigation results from the alleged injuries that arise out of or relate to those activities. <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1972) (internal cites and quotes omitted).

SOM wants to obtain jurisdiction over Strabala for statements he made regarding the source of architectural services but bases jurisdiction on events that have nothing to do with those statements. SOM argues that Due Process allows jurisdiction over Strabala because has a New York State architectural license and targeted actual and potential clients of SOM based in New York (F.A.C. ¶ 15). However, the lawsuit has nothing to do with Strabala's New York architectural license, which Strabala never used to obtain or conduct business. (Strabala Decl. ¶ 17.) SOM has also failed to identify a single potential or actual SOM client who attended Strabala's presentation or viewed the websites. SOM also argues that there is jurisdiction in New York partly because Strabala sought publicity from media entities based in New York (F.A.C. ¶ 44). However, SOM does not allege that any statements

11

made to or any articles published by those entities concerned the source of architectural services. Strabala went to New York in 2007 on behalf of Gensler, but again, that has nothing to do with the subject matter of the lawsuit.

The Due Process Clause would not permit the exercise of general jurisdiction over Strabala based on interviews given in China to New York-based media entities where the subject matter of the suit is not discussed or published. Nor would it suffice for Strabala to have merely worked with the Shanghai office of a New York-based company on a project in Shanghai that has nothing to do with the lawsuit.

### b. SOM Does Not State a Claim For Relief Under The Lanham Act And The Claims Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6).

SOM brings claims for unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1225(a)(1)(A) and (B). SOM alleges that Strabala has falsely represented himself as the source of architectural services actually provided by SOM, thereby causing confusion. (F.A.C. ¶¶ 71, 72, 78, and 80.) However, the U.S. Supreme Court, in <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 36-37 (2003), has rejected the notion that the Lanham Act protects creators of communicative goods from false claims of authorship. Therefore, even if it is assumed that the allegations of the F.A.C. are true, SOM's claims arising from the Lanham Act should be dismissed under Fed. R. Civ. P. 12(b)(6).

#### i. Standard of Review.

In order to state a claim under Fed. R. Civ. P. 12(b)(6), the First Amended Complaint must contain sufficient facially-plausible factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>LaChapelle v. Fenty</u>, 812 F.Supp.2d 434, 439 (S.D.N.Y. 2011) citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 677-678 (2009). Threadbare recitals of the elements of a cause of action supported by mere

conclusory statements do not suffice to withstand a motion to dismiss. Id.

    ii.    SOM Has To Rely on Copyright Law And Not the Lanham Act To Defend Against Claims of Authorship

The Lanham Act imposes liability for "any false designation of origin, false or misleading description of fact, or false or misleading representation of face" that "(A) is likely to cause is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities." 15 U.S.C. § 1125(a)(1).

Here, SOM alleges that Strabala unfairly competed by passing off SOM's architectural services for the design of various buildings as his own, and that he falsely advertised that fact. That is despite evidence in Exhibit B of the First Amended Complaint that Strabala acknowledged SOM and also demonstrated how large the design teams were, absolutely contradicting SOM's allegation that he claimed to have designed it alone.

Regardless, SOM's claims under the Lanham Act must fail because the law "cannot be invoked as an end run around the copyright laws or to add another layer of protection to copyright holders." Agence France Presse v. Morel, 769 F.Supp.2d 295, 307 (S.D.N.Y. 2011) citing Dastar Corp., 539 U.S. at 33-34. The Lanham Act does not protect originality or creativity; with regard to communicative products, the origin of any idea, concept, or communication embodied is not protected by the Lanham Act. Id. Therefore, SOM's claims arising from allegations of false designation of authorship is foreclosed by Dastar. Id.

On similar facts, in Broughel v. Battery Conservancy, the court denied a motion to

amend the complaint as moot because the proposed amended complaint would not survive a Rule 12(b)(6) motion to dismiss. 2010 WL 1028171 *1 (S.D.N.Y. 2010). In Broughel, the Plaintiff attempted to assert Lanham Act claims for unfair competition and false advertising because Defendants deleted her role as the author and designers of the interior of the Sea Glass Project and thirty-two Sea Creatures. Id. at *3. The court rejected the notion that the Lanham Act gives rise to a cause of action for failing to give her due credit for the origin of the design of various sculptures. Id.

Furthermore, SOM has failed to allege any facts suggesting that Strabala was engaging in commercial advertising or promotion that was designed to deceive the public as to the source of the service. See Broughel at *4. SOM does not allege that Strabala ever said that SOM did not design the buildings, and admit that he attributed works to SOM. (F.A.C. ¶ 57.) SOM admits that Strabala worked on the design of the Burj Khalifa and the Nanjing Greenland. (F.A.C. ¶ 23.) SOM only claims that that Strabala took too much credit. (F.A.C. ¶ 28.)

Moreover, SOM fails to set forth any allegations that the public was in any way confused as to the source of the design of the Burj Khalifa and the Nanjing Greenland. SOM makes the pro forma allegation that some of the attendees at the Summit were actually confused, but fails to identify any of them despite taking jurisdictional discovery. (F.A.C. ¶ 47). It is not plausible to conclude that Strabala was deceiving the public. The Flickr page in question properly credits SOM at almost every turn. (F.A.C. Ex. A.) The 2Define website at www.define-arch.com, which SOM complains of, clearly states that Strabala was employed at SOM. (F.A.C. ¶¶ 32, 33, 34, 35.) Similarly, the Flickr page states that Strabala worked on the buildings while working at SOM. (F.A.C. ¶ 36, 37, 38.) The Presentation lists

14

SOM and discusses in detail the large size of the design teams. (F.A.C. Ex. B.) The state law claims should also be dismissed because they are coopted by the federal Copyright Act.

SOM has not set forth any plausible facts that Strabala has intended to cause any confusion as to the source of the design services for the Burj Khalifa or the Nanjing Greenland. Strabala has properly credited SOM at every pass, in written documents and in the Presentation. Nor can SOM rely on the Lanham Act to protect its claimed right to proper attribution. Therefore, SOM's claims under the Lanham Act should be dismissed pursuant to Rule 12(b)(6).

### III. CONCLUSION

For the reasons set forth above, Strabala respectfully requests that the Court dismiss this case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or in the alternative, to dismiss Counts 2-4 of the Complaint which arise under the Lanham Act and the New York common law pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted.

Dated: May 11, 2012.
New York, NY

William W. Chuang
Jakubowitz & Chuang LLP
325 Broadway Suite 301
New York, NY 10007
Tel.:   (212) 898-370
*Attorneys For Defendant*

CC:   Marcia Paul
      Davis Wright Tremaine LLP
      1633 Broadway
      27th Floor
      New York, New York 10019
      Tel.:   (212) 603-6427
      *Attorneys For Plaintiff*